**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **DEAUTRIC X SIMS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-cv-01291-P-BP** |
| | § | |
| **CITY OF FORT WORTH,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This employment discrimination case was referred to the undersigned for pretrial management on December 3, 2020. ECF No. 7. Before the Court is Defendant City of Fort Worth's 12(b)(6) Motion to Dismiss and Brief in Support filed on May 3, 2021. ECF No. 30. Plaintiff has not filed a response to the Motion. Based upon a full review of the relevant pleadings on file and the applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Mark T. Pittman **GRANT** the City of Fort Worth's Motion to Dismiss (ECF No. 30), and **DISMISS** Plaintiff's claims under Title VII of the Civil Rights Act of 1964 ("Title VII") **with prejudice**.

**I.    BACKGROUND**

Plaintiff Deautric X. Sims ("Sims"), a former Fort Worth police officer, brings this claim under Title VII against the City of Fort Worth ("the City") for racial discrimination and retaliation based on his termination for misconduct. ECF No. 28. On November 28, 2017, while Sims was working at Metro Alternative High School in Fort Worth, Texas, school administrators asked him to assist with an incident involving a student's alleged possession of marijuana. *Id.* at 1-2. Sims determined that the student was not in possession of marijuana and closed the investigation. *Id.* at

2. On December 18, 2017, a school administrator made a comment regarding Sims's failure to arrest the student, which led to an investigation by the Fort Worth Police Department's Internal Affairs Division ("IA"). *Id.* Sims claims that he never received any written complaint from the IA regarding this incident, and that this was in direct violation of Texas Government Code § 614.022. *Id.*

On January 29, 2018, the IA notified Sims that it had received a complaint that he mishandled evidence related to the incident on November 28, 2017. *Id.* Sims then received a second complaint on February 23, 2018 alleging that he falsified his timesheets. *Id.* After being notified of the complaints, Sims accused the IA of conducting investigations that were discriminatory and that violated the Texas Commission of Law Enforcement Civil Service Rules and Regulations, the Texas Local Government Code, and his due process rights. *Id.*

On May 20, 2018, the Fort Worth Police Department ("FWPD") indefinitely suspended Sims for failure to properly inventory evidence relating to the November 2017 incident. *Id.* Sims appealed his suspension, claiming that it was racially motivated and in violation of state law as he never received any formal complaints. *Id.* Sims's suspension was upheld, and he was dishonorably discharged on February 26, 2019. *Id.* Almost a year later, on February 11, 2020, Sims filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued a Right to Sue letter on September 3, 2020. *Id.*

On November 30, 2020 Sims filed his original complaint without being represented by counsel. ECF No. 3. Sims originally brought his claims against the FWPD, but after not responding to its Motion to Dismiss, Sims obtained counsel, and the Court granted him leave to amend his complaint. *See* ECF Nos. 3, 20, and 29. Sims amended his complaint, claiming racial discrimination and retaliation against the City instead of the FWPD. ECF No. 28. In response, the

City filed a Motion to Dismiss for failure to state a claim upon which relief may be granted. ECF No. 30. It asserts that Sims's claims are time-barred because he did not timely file a charge of discrimination with the EEOC within 300 days of his termination, and even if his charge had been timely filed, Sims did not plead any facts to establish either a racial discrimination or retaliation claim. *Id.* at 8-13. As noted above, Sims did not file a response to the City's Motion.

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. The Rules require that each complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In considering a Rule 12(b)(6) motion, courts "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" Y*umilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Additionally, a court may take judicial notice of matters of public record without converting a

3

motion to dismiss into a motion for summary judgment. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citation and quotation marks omitted).

### B.    Dismissal with or without prejudice

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible the Fifth Circuit has recommended that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings. *Great Plains Tr. Co.*, 313 F.3d at 329; *see In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 548–49 (N.D. Tex. 2014) (Boyle, J.) (dismissing for failure to state a claim without prejudice, as dismissing with prejudice would be "too harsh a sanction").

Nonetheless, courts may appropriately dismiss an action with prejudice if the court finds that the plaintiff has alleged its best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). Likewise, a court may dismiss an action with prejudice without affording plaintiff the chance to amend where the court invited the plaintiff to respond to the motion to dismiss, but he failed to do so. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). If the court "outline[s] in [its]

opinion the deficiencies" of plaintiff's pleading and "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance that plaintiff has been shown all the deference he is due." *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2-*3 (quoting *Barber v. G.H. Rodgers*, No. CA3-84-1750-D (N.D. Tex. Sept. 13, 1988)). Moreover, courts may dismiss an action with prejudice without permitting amendment if the defendant is entitled to absolute immunity because the "plaintiff will never have a claim against the defendant based on the particular facts alleged." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).

## III.    ANALYSIS

### A.    Sims did not timely file a charge with the EEOC.

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). Administrative exhaustion "occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue," *id.* at 379, or when he "files a timely charge with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996).

The plaintiff "must file a charge of discrimination with the EEOC within 180 days of the date of the alleged discrimination, or within 300 days of the alleged discrimination if he institutes his action with the appropriate state agency" and "receives a statutory notice of right to sue." *Owens v. Dallas Cty. Cmty. Coll. Dist.*, No. 3:16-cv-3162-L, 2017 WL 3190727, at *2 (N.D. Tex. May 16, 2017) (citing *Dao*, 96 F.3d at 789; 42 U.S.C. § 2000e-5(e)(1)); *see also Gonzales v. Pan Am. Labs, L.L.C.*, No. 3:14-cv-2787-L, 2015 WL 5731289, at *2 (N.D. Tex. Sept. 29, 2015) (citing *Taylor*, 296 F.3d at 378-79).

Under Title VII, the plaintiff has ninety days to file a civil action after he receives his right to sue letter from the EEOC. *Nilsen v. City of Moss Point, Miss.*, 674 F.2d 379, 381 (5th Cir. 1982) (citing 42 U.S.C. § 2000e-5(f)(1) (1994)). The courts strictly construe the ninety-day deadline for filing suit, and courts in the Fifth Circuit "have repeatedly dismissed cases in which the plaintiff did not file a complaint until after the ninety-day limitation period had expired." *Taylor*, 296 F.3d at 379.

In cases involving indefinite suspensions that ultimately lead to the employee being terminated, the deadline for filing a complaint with the EEOC "will commence when the employee receives unequivocal notice of his termination or when a reasonable person would know of the termination." *Burfield v. Brown, Moore & Flint, Inc.,* 51 F.3d 583, 588 (5th Cir.1995); *see also Delaware State College v. Ricks,* 449 U.S. 250, 261 (1980). This requirement "reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *Id.* at 260. Applying this standard, the Court in *Ricks* determined that the operative event for the running of the EEOC filing deadline was when the plaintiff professor learned that the defendant college was denying him tenure, not when his appeal of that denial was decided. *Id.*

Similarly, the Fifth Circuit held that the deadline for a terminated Houston Fire Department employee to file his complaint with the EEOC ran from when he was indefinitely suspended, not when the City of Houston's Civil Service Commission upheld his suspension following an appeal by the plaintiff. *Joe v. City of Houston Fire Dept.*, 211 F.3d 124, 2000 WL 309460, *2 (5th Cir. Mar. 1, 2000). To avoid application of this date, the plaintiff in *Joe* would have to plead and prove that the Civil Service Commission "had reviewed his suspension in a manner different from that it employed when reviewing the indefinite suspensions of other employees and that it had done so

on account of race." *Id.* The plaintiff not having offered such pleadings or evidence, the court found that his complaint at the EEOC came too late.

The same reasoning in *Ricks* and *Joe* applies here. Sims was indefinitely suspended on May 20, 2018. He appealed the suspension order, his suspension was upheld on appeal, and the City terminated his employment on February 26, 2019. Because Sims has not alleged any facts to support a claim that the City reviewed his suspension differently from the suspensions of other employees, the statutory period in which Sims was required to file a complaint with the EEOC commenced on May 20, 2018. Accordingly, Sims had until March 16, 2019 to file a complaint with the EEOC. However, he did not file his complaint with the EEOC until February 11, 2020 — 332 days after the filing limitations period had expired. *See* ECF No. 31 at 5.

Despite Sims's failure to file his charge of discrimination within the 300-day period, his Title VII claims are not time-barred if equitable principles operate to preserve them. Filing a timely charge of discrimination with the EEOC, like a statute of limitations, is subject to equitable doctrines such as estoppel and equitable tolling. *Zipes v. Trans World Airline, Inc.*, 455 U.S. 385, 393 (1982) (footnote omitted). The courts are to apply such doctrines sparingly. *AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002).

Equitable tolling applies only in "rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 927, 930 (5th Cir. 2000). The Fifth Circuit has described at least three bases for equitable tolling: "(1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of [his] rights." *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011). The party seeking to toll limitations has the burden of proving the need for tolling. *Teemac v. Henderson*, 298 F.3d 452, 454 (5th Cir. 2000).

Sims has not alleged any facts to suggest that any of the three bases for equitable tolling apply in his case. To satisfy the first basis for tolling, the Fifth Circuit has held that it arises only in "the rare case when the parties have been litigating an action in state court, but they later discover that they chose the wrong forum under state law." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 880 (5th Cir. 2003). Here, Sims does not claim that the delay in filing his EEOC charge was caused by the pendency of a parallel state proceeding.

The most common basis for tolling is the second scenario — "the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Teemac*, 298 F.3d at 454 (quoting *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000)). Employer misconduct does not justify equitable tolling if the plaintiff actually knew of his rights. *Clark v. Resistoflex Co.*, 854 F.2d 762, 767-68 (5th Cir. 1988). Sims does not allege that the City attempted to conceal any facts surrounding his claim or prevented him from asserting his rights. As a result, the second basis for tolling does not apply in this case.

To secure tolling under the third basis, Sims must show that the EEOC provided information that was "affirmatively wrong." *Ramirez v. City of San Antonio*, 312 F.3d 178, 184 (5th Cir. 2002). Sims does not claim that the EEOC provided him any information prior to filing his claim, let alone any information that was "affirmatively wrong." Accordingly, Sims has not established that he is entitled to equitable tolling.

Sims also has not stated any facts that would equitably estop the City from asserting the limitations period for filing a charge of discrimination. "Equitable estoppel … examines the defendant's conduct and the extent to which the plaintiff has been induced to refrain from exercising his rights." *Clark*, 854 F.2d at 769 n.4 (quoting *Felty v. Graves-Humphreys*, 785 F.2d 516, 519 (4th Cir.1986)). "The doctrine may properly be invoked when the employee's

untimeliness in filing his charge results from either the employer's deliberate design to delay the filing or actions that the employer should unmistakably have understood would result in the employee's delay." *Clark*, 854 F.2d at 769 (internal quotations and citations omitted). Sims does not claim that the City prevented him from exercising his rights. He concedes that he was notified on May 20, 2018 that he was indefinitely suspended from FWPD for failing to properly inventory evidence. He does not allege that the City prevented him from filing a complaint with the EEOC or that the it withheld relevant information from him and prevented him from timely filing a complaint. Additionally, as the City advised Sims that he was being discharged for cause, nothing in the pleadings suggest that the City should not be entitled to the benefits of the limitation period. *See Blumberg v. HCA Management Co.*, 848 F.2d 642, 645 (5th Cir. 1988) (employer is entitled to enjoy benefits of filing period since it advised the plaintiff why she was discharged).

Sims did not file his charge of discrimination with the EEOC in a timely manner. He did not plead facts to show that the City reviewed his termination in a discriminatory way, that that his charge of discrimination was subject to equitable tolling, or that the City should be equitable estopped from enforcing the filing deadline. Therefore, since Sims's indefinite suspension occurred more than 300 days before he filed a complaint with the EEOC, Judge Pittman should dismiss Sims's Title VII claims for race discrimination and retaliation as time barred.

Ordinarily, "[w]hen a district court dismisses a claim under Rule 12(b)(6) for failure to exhaust administrative remedies, the dismissal is without prejudice to the claimant's right to return to court after it has exhausted its administrative remedies." *Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 n.5 (5th Cir. 2004) (citing *Taylor v. United States Treasury Dep't,* 127 F.3d 470, 478 (5th Cir. 1997); *Story v. Gibson*, 896 F.3d 693, 698 n.2 (5th Cir. 2018); *Crawford v. Tex. Army Nat'l Guard,* 794 F.2d 1034, 1035, 1037 (5th Cir. 1986)). However, Judge

Pittman should dismiss Sims's Title VII claims with prejudice since amendment could not cure the untimeliness of his claims.

    **B.**     **Even if Sims had timely filed his charge of discrimination with the EEOC, he has not stated a claim upon which relief may be granted.**

        *1.*     *Sims has not stated a claim of racial discrimination under Title VII.*

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Liability for race discrimination under Title VII requires a showing of "disparate treatment," meaning it "depends on whether the protected trait actually motivated the employer's decision." *Moghalu v. Bd. of Supervisors for the Univ. of La. Sys. for Nw.*, 643 F. App'x 326, 329 (5th Cir. 2016) (citation and internal quotation marks omitted). "A plaintiff can prove disparate treatment either (1) by direct evidence that a workplace . . . decision relied expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in *McDonnell Douglas*." *Id.* at 330 (citation omitted). Under this framework, a plaintiff must establish a prima facie case of discrimination by showing that

> (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Id.* (citation omitted). Nevertheless, it is not necessary

> for a plaintiff to "make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). Indeed, the Supreme Court has cautioned that "the prima facie case should not be transposed into a rigid pleading standard for discrimination" cases. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 507 (2002). That being said, "[a]llegations related to that prima facie inquiry may nonetheless be helpful in satisfying the general *Iqbal* plausibility standard." *Haskett v. Cont'l Land Res., LLC*, 668 F. App'x 133, 134 (5th Cir. 2016) (citation omitted).

*Davis v. Matagorda Cty.*, No. 3:18-cv-00188, 2019 WL 1015341, at *8 (S.D. Tex. Mar. 4, 2019) (brackets in original).

If the plaintiff successfully establishes a prima facie case of discrimination, "the burden then shifts to the employer to produce evidence that its actions were justified by a legitimate, nondiscriminatory reason." *Moghalu*, 643 F. App'x at 329 (citation and internal quotation marks omitted). Then, the plaintiff has the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant" were a mere pretext for discrimination. *Id.* (citation and internal quotation marks omitted). The plaintiff may alternatively prove that the employer's reasons were not the only reasons for its conduct, and the plaintiff's protected characteristic was another "motivating factor." *Id.* (citation omitted).

Here, Sims does not allege disparate treatment by pleading facts to support a claim that he was suspended due to his race. So, the Court will analyze his claim under the *McDonnell Douglas* burden-shifting framework, using the requirements for a prima facie case as a guide for whether Sims's Complaint meets the *Twombly/Iqbal* pleading standard. *See Davis*, 2019 WL 1015341, at *8.

Sims alleges facts to support the first and third element of the framework, but not the second or fourth. He properly alleges the first element by stating that he is African American, which shows that he is a member of a protected class. *Lyles v. Tex. Alcohol Beverage Comm'n*, 379 F. App'x 380, 383 (5th Cir. 2010); ECF No. 28 at 1. He also properly alleges that he was suspended and later dishonorably discharged, which constitute an "adverse employment action." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (citations omitted); ECF No. 28 at 2. Sims does not allege the second element. He plainly states that his suspension was racially motivated, but he does not allege that he was qualified to maintain the position after being found

to have mishandled evidence. Sims also does not allege facts to support the fourth element of the

*McDonnell Douglas* test that requires him to show unequal treatment.

> When analyzing a Title VII claim under the *McDonnell Douglas* framework,
>
> [t]he employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Sims does not plead any facts to

show that another non-African American employee did not get suspended under nearly identical

circumstances. In fact, Sims's Amended Complaint is devoid of any mention of other employees,

let alone other employees whose conduct and situation were nearly identical. Instead, Sims merely

concludes without any factual description that the IA investigations that led to his suspension were

racially motivated.

Even considering the Supreme Court's mandate against converting the prima facie case

from a "flexible evidentiary standard" into a "rigid pleading standard for discrimination cases,"

Sims does not offer sufficient factual allegations to support an argument that his race actually

motivated the City to suspend and ultimately terminate his employment. *Swierkiewicz*, 534 U.S.

at 512; see *Moghalu*, 643 F. App'x at 329. Construing Sims's Amended Complaint liberally and

recognizing that he need not plead a prima facie case of race discrimination to overcome the City's

Rule 12(b)(6) motion, his Amended Complaint lacks enough factual allegations "to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555. Because Sims only pleads facts to

support two of the four elements required to state a Title VII claim of racial discrimination, he

does not satisfy the Rule 12(b)(6) pleading standard.

2. *Sims has not stated a claim of retaliation under Title VII.*

To state a retaliation claim under Title VII, a plaintiff must plead that (1) he engaged in an activity protected by the statute; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). The Supreme Court clarified in *Burlington Northern & Santa Fe Ry. Co. v. White*, that an "adverse employment action" is defined differently in the retaliation context than it is in the discrimination context. 548 U.S. 53, 68 (2006). In the retaliation context, it is an action that "a reasonable employee would have found ... [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotations omitted).

Title VII's retaliation provision encompasses two broad types of protected activity, making it "an unlawful employment practice for an employer to discriminate against any of his employees ... [1] because he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Under the statute, making internal complaints or filing a charge with the EEOC is protected conduct. *See Ackel v. National Commc'ns, Inc.*, 339 F.3d 376, 384 (5th Cir. 2003).

To establish the causation element, the plaintiff must present either "direct evidence of retaliation," or "circumstantial evidence creating a rebuttable presumption of retaliation." *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007). Similar to Title VII race discrimination claims, the *McDonnel Douglas* burden-shifting framework applies when the plaintiff attempts to establish retaliatory intent using circumstantial evidence. *McDonnell Douglas Corp.*, 411 U.S. 792, 802 (1973); *Moata v. Univ. of Texas Houston Health Science Center*, 261 F.3d 512, 519-20

(5th Cir. 2001). Under the *McDonnell* test, the burden shifts to the plaintiff to show that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 395 (5th Cir. 2002). If the plaintiff makes out his prima facie case, then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant can establish that the plaintiff was adversely treated due to a legitimate reason, the plaintiff may then attempt to prove retaliation by offering evidence that the defendants' stated reason is pretextual. *Id.* The standard of proof on the pretext element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred "but for" his protected conduct. *Septimus v. Univ. of Houston*, 399 F.3d 601 (5th Cir. 2005); *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004).

In his Amended Complaint and his EEOC Charge, Sims claims that he was "retaliated against" by his indefinite suspension which led to his termination. ECF Nos. 28 at 2 and 31 at 5. Job termination is clearly an adverse employment action.

While Sims does not allege in his Amended Complaint that he was engaged in a protected activity, in his EEOC charge he claims that his termination occurred after he complained about being discriminated against due to his race, which he asserts proves that he was retaliated against. ECF No. 31 at 5. As stated above, making internal complaints is considered a protected activity. Therefore, Sims's internal complaints to the IA would be considered protected conduct. Accordingly, Sims has the burden to establish that there was a "causal link" for a *prima facie* showing that the City's decision to terminate him was based in part on knowledge of his protected activity. *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir.2001).

14

Despite meeting the first two elements of a retaliation claim, Sims does not state any facts to establish the third element. He does not plead any facts to show that the City had knowledge of his complaints to the IA or that the City suspended Sims after learning of his complaints. In support of his retaliation claim, Sims simply states that his suspension was "racially motivated and that he did not receive formal complaints in conformity with state law." ECF No. 28 at 2. Merely stating that his suspension was racially motivated is insufficient to show that a causal link exists between the protected activity and the adverse employment action. Consequently, Sims does not bridge the causal link between his suspension and the City's allegedly discriminatory practices. For this reason, Judge Pittman should dismiss Sims's claim of retaliation against the City for failure to state a claim upon which relief can be granted.

## IV.     CONCLUSION

Because Sims did not timely assert his claims under Title VII, and because he failed to state a claim upon which relief could be granted for race discrimination and retaliation, the undersigned **RECOMMENDS** that Judge Pittman **GRANT** the City's Motion to Dismiss (ECF No. 30), and **DISMISS** Sims's Title VII claims **with prejudice**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on July 9, 2021.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE